UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
IRIS CORPORATION,

                                Plaintiff,

      -against-

JAPAN AIRLINES INTERNATIONAL CO.,
 LTD.,

                             Defendant.
----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
06-CV-6336 (CBA)

AMON, United States District Judge.

      Plaintiff IRIS Corporation ("IRIS") filed suit against defendant Japan Airlines International Co., Ltd. ("Japan Airlines") alleging direct infringement of U.S. Patent No. 6,111,506, in violation of 35 U.S.C. § 271(g). On June 1, 2007, Japan Airlines moved to dismiss the action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). By order dated June 4, 2007, this Court referred the motion to the Honorable Kiyo A. Matsumoto, then United States Magistrate Judge, for a Report and Recommendation.

      The Court has received the Report and Recommendation ("R&R"), dated January 14, 2008, recommending that defendant's motion be granted. IRIS and Japan Airlines both filed timely objections to the R&R. After reviewing the objections to the R&R, this Court solicited the views of the United States on issues raised in this motion. The United States filed its Statement of Interest on August 7, 2008. Having reviewed all of these materials and for the reasons set forth below, the Court adopts Judge Matsumoto's R&R as its opinion and grants Japan Airlines' motion to dismiss.

1

**I.      Background**[1]

IRIS's amended complaint alleges patent infringement by Japan Airlines stemming from Japan Airlines' examination of passenger passports at its terminal in New York's John F. Kennedy International ("JFK") Airport and other check-in locations within the United States. IRIS is the assignee of U.S. Patent No. 6,111,506 (the "'506 patent"), entitled "Method of Making an Improved Security Identification Document Including Contactless Communication Insert Unit." The '506 patent contains claims directed to a process for manufacturing a secure electronic passport consisting of a computer chip embedded in a multi-layered document which contains biographical or biometric data about the passport holder.

Japan Airlines examines passports at its terminal within JFK Airport pursuant to federal laws and regulations, including the Enhanced Border Security Act, 8 U.S.C. § 1221 et seq., the Visa Entry Reform Act of 2002, 19 C.F.R. § 122.75a, and applicable international treaties. The passport examinations occur prior to each departing flight and after each arriving flight.

IRIS brings its patent infringement claim pursuant to 35 U.S.C. § 271(g) which provides that:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

35 U.S.C. § 271(g). IRIS alleges that the passports of Japan Airlines passengers were made using their patented '506 process, that they constitute "products" as defined by the patent laws,

---

[1] Judge Matsumoto's Report and Recommendation sets forth the factual background of this motion in detail. (See R&R at 2-6.)

and that Japan Airlines' inspection of the passports at their terminal constitutes an infringing "use" under § 271(g).

### A. Motion to Dismiss

Japan Airlines raises four arguments in its motion to dismiss. First, it claims that the terms "product" and "use" in 35 U.S.C. § 271(g) do not encompass the government-owned electronic passports handled by Japan Airlines because passports are not "products" under the § 271(g) definition and Japan Airlines does not "use" the issued passports as a manufacturer, importer, seller or purchaser in the chain of commercial distribution and supply. Second, Japan Airlines contends that if its examination of passports is found to constitute infringement under 271(g) then federal laws requiring the examination of passports conflict with patent laws and must be reconciled by exempting Japan Airlines from infringement. Japan Airlines further argues that IRIS's claim is barred under the "doctrine of foreign sovereign compulsion" because the airline is compelled by foreign sovereigns to examine passports. Finally, insofar as IRIS's claims relate to U.S. passports, Japan Airlines contends that it is immune from suit and IRIS's exclusive remedy is against the U.S. government in the Court of Federal Claims pursuant to 28 U.S.C. § 1498(a).

The Report & Recommendation rejects Japan Airlines' contention that its conduct does not fall within the provisions of 271(g). Specifically, the R&R found that passports which were manufactured using the patented '506 process are "products" for the purposes of 35 U.S.C. § 271(g) and Japan Airlines' examination of the passports at its terminal constitutes a "use" under the statute. The R&R found more persuasive Japan Airlines' alternative argument—that 35 U.S.C. § 271(g) conflicts with the Enhanced Border Security Act of 2002, 8 U.S.C. § 1221

et seq. The R&R resolved this conflict by considering the underlying purposes of both statutes as well as the statutes' priority of enactment and concluded that Japan Airlines should not be held liable under § 271(g) for infringement of the '506 patent because of its compliance with the Enhanced Border Security Act. Accordingly, the R&R recommends that IRIS' amended complaint be dismissed. In light of this conclusion, the R&R declined to address Japan Airlines' remaining two grounds for dismissal.

### B. Objections

IRIS and Japan Airlines filed timely objections to the R&R. IRIS objects to the finding that a conflict exists between 35 U.S.C. § 271(g) and the Enhanced Border Security Act, and to the R&R's reliance on SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21 (2d Cir. 2000). Japan Airlines, while concurring with the R&R's recommendation that its motion be granted, objects to the R&R's conclusion that Japan Airlines' examination of passports constitutes a "use" of a "product" under 35 U.S.C. § 271(g). Rather than finding that a conflict exists between § 271(g) and the Enhanced Border Security Act, Japan Airlines argues that the preferred approach would be to construe § 271(g) to avoid a conflict by analyzing the terms "use" and "product" to exclude the examination of passports. Lastly, while Japan Airlines agrees with the R&R that, for reasons of judicial economy, the Court need not address its remaining two grounds for dismissal, it reasserts these arguments in its objections to the extent that this Court does not adopt the R&R on other grounds.

## II. Discussion

This Court reviews the R&R de novo. See Fed. R. Civ. P. 72(b)(3). It turns first to the objections of Japan Airlines.

### A. "Product" and "Use" under 35 U.S.C. § 271(g)

35 U.S.C. § 271(g) provides a remedy for process patent holders when the claimed process is employed outside the United States and the resulting products are imported into the United States or offered for sale, sold, or used domestically. In its motion papers and again in the objections to the R&R, Japan Airlines contends that the electronic passports at issue in this case are not "products," and the airline's inspection of the passports is not a "use" under the proper interpretation of § 271(g).

The R&R concluded that the word "product" is not limited to products with a commercial purpose. In reaching this conclusion, the R&R relied upon well-established principles of statutory interpretation, including examination of the statutory language itself to determine the ordinary meaning of the term at issue. (See R&R at 11-13.) The R&R also noted that the Federal Circuit has never interpreted the word "product" as containing a commercial component and properly found that the word refers to any "physical article that was manufactured." (Id. at 13-14.) Further, the R&R cited to ample evidence that Congress considered the legislative purpose of the statute and deliberately declined to limit the word "product" to commercial products. (Id. at 14-16.)

In its objections to the R&R, Japan Airlines argues that the word "product" is ambiguously defined in § 271(g), and that the R&R failed to adequately consider the legislative history of the section in resolving the ambiguity. To the contrary, the R&R directly addressed these arguments and found them wanting. (Id. at 14-15.) Japan Airlines does not point to any part of the statute's legislative history which would indicate that Congress intended to limit this remedy to commercial products.

5

The R&R also found that Japan Airlines' inspection of the passports constitutes a "use" for the purposes of 35 U.S.C. § 271(g). The R&R considered the ordinary dictionary meaning of the term "use" as well as the Federal Circuit's history of interpreting the term broadly in this section of the patent statute. (See R&R at 19-20.) The R&R concluded that Japan Airlines' use of the electronic passports to identify its passengers and compile passenger lists is the very use for which the passports are intended and thus constitutes a "use" under the patent statute.

In its objections, Japan Airlines argues that its handling of issued passports is involuntary and outside of any commercial distribution and supply chain for passports, and therefore beyond the scope of § 271(g). In support of its contention, Japan Airlines once again refers the Court to the legislative history of the section.

Questions of statutory interpretation begin with the language of the statute itself. See Bull v. United States, 479 F.3d 1365, 1376 (Fed. Cir. 2007). Where ambiguity persists after analysis of the statutory language, it is appropriate to resort to legislative history to determine Congressional intent. Hoechst Aktiengesellschaft v. Quigg, 917 F.2d 522, 526 (Fed. Cir. 1990) ("[w]hen faced with such [statutory] ambiguity it is incumbent upon this court to examine the legislative history to discern Congress' intent"). However, there is a "strong presumption in favor of the plain language of the statute." Id. at 1377; See also Garcia v. United States, 469 U.S. 70, 75 (1984) ("While we now turn to the legislative history as an additional tool of analysis, we do so with the recognition that only the most extraordinary showing of contrary intentions from those data would justify a limitation on the 'plain meaning' of the statutory language.").

This Court concurs with the R&R's finding that the examination of passports constitutes

6

a "use" of the passports under § 271(g) based on the ordinary meaning of "use" and review of United States Supreme Court and Federal Circuit decisions construing the term broadly. (See R&R at 18-19.) The Court notes that even if it considered legislative history for guidance in interpreting the word "use" in § 271(g), Japan Airlines has not pointed to any "extraordinary showing of contrary intentions" in the legislative history that would justify the limited interpretation it seeks. Garcia, 469 U.S. at 75. Accordingly, the Court adopts the R&R's finding that Japan Airlines' examination of passports constitutes a "use" under 35 U.S.C. § 271(g).

   **C.**  **Conflict between 35 U.S.C. § 271(g) and The Enhanced Border Security Act**

Having determined that the allegations contained in IRIS's amended complaint were sufficient to constitute "use" of a "product" under 35 U.S.C. § 271(g), the R&R next considered the question of whether in this case a conflict exists between § 271(g) and the Enhanced Border Security Act. The R&R reasoned that because Japan Airlines is required to inspect passenger passports under the Enhanced Border Security Act, and compliance with this law requires using a product that was made by a patented process, a conflict exists between the Enhanced Border Security Act and the patent laws. (R&R at 24-26.)

For guidance in resolving the conflict between the requirements of the Enhanced Border Security Act and the protections offered to patent holders under 35 U.S.C. § 271(g), the R&R relied on the decision of the Second Circuit in SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21 (2d Cir. 2000). SmithKline involved a conflict between the Hatch-Waxman Amendments and the Copyright Act. The Second Circuit resolved the conflict by examining the underlying purposes of the conflicting statutes and adopting "the

interpretation that preserves the principal purposes of each." SmithKline, 211 F.3d. at 27-28 (citing Zenith Elecs. Corp. V. Exzec, Inc., 182 F.3d 1340, 1347 (Fed. Cir. 1999)). The SmithKline court also gave weight to the statutes' priority of enactment in determining that the purposes of the earlier-enacted Copyright Act would not be undermined by the court's decision that the Hatch-Waxman Amendments took precedence over it. Id. at 28 n.3 (citing FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000)).

Following the analytical framework set forth in SmithKline, the R&R found that the principal purpose of § 271(g) is to protect process patents holders from economic loss when the holder's patented process is performed abroad and the products of that process are brought into the United States. Any abrogation of the exclusive rights of the patent holder would undermine the overall purpose of the patent statute, namely, "to promote the progress of science." U.S. Const. Art. I, § 8. The R&R concluded, however, that the national security interests which underlie the Enhanced Border Security Act outweigh the interest in protecting a process patent holder's rights under § 271(g) of the patent statute. (See R&R at 24-25.) In weighing the patent interests, the R&R conceded that if infringement is permitted without recourse to damages incentive to create is diminished. The R&R further observed that IRIS had not alleged in its complaint that it had not been compensated for licensing or manufacturing the patent. (R&R at 27-28.) The R&R also considered the statutes' priority of enactment—the fact that the Enhanced Border Security Act was enacted fourteen years after the patent statute was amended to include § 271(g) favored the conclusion that the Enhanced Border Security Act should override § 271(g).

Both parties object to Judge Matsumoto's conclusion that a conflict exists between 35

U.S.C. § 271(g) and the Enhanced Border Security Act. IRIS argues that there is no conflict because Japan Airlines can comply with both statutes by compensating IRIS for the use of passports made by its patented process. IRIS also contends that the R&R's analysis is flawed because it relied on the failure of IRIS to allege it was not compensated for manufacturing or licensing the '506 patent by the passport manufacturers. IRIS states it could easily amend its complaint to make that allegation. Although supporting the reasoning of the R&R as an alternate grounds to dismiss the case, Japan Airlines argues that the conflict between the Enhanced Border Security Act and § 271(g) is more properly resolved by construing the terms "product" and "use" in § 271(g) to exclude examination of electronic passports.

The Court agrees with the R&R's finding that in this case a conflict exists between the Enhanced Border Protection Act and 35 U.S.C. § 271(g). It is undisputed that the Enhanced Border Protection Act requires Japan Airlines to examine the passports of departing passengers at domestic airports and therefore the airline must infringe IRIS's '506 patent, assuming, arguendo, that IRIS's claim has merit. Further, the Court concurs with the R&R's analysis and conclusion that the national security interests protected by the Enhanced Border Protection Act outweigh IRIS's commercial interest in its patent under § 271(g).

IRIS's objections to the R&R are not persuasive. First, IRIS mischaracterizes the R&R's findings by claiming that the R&R based the decision principally on the fact that IRIS failed to allege it was not compensated for any manufacturing or licensing of the patented process. The R&R did mention this fact in weighing the patent interests but it did not rely exclusively or even substantially on this fact in finding that the security interests trumped the patent interests in this case. The compensation issue was one of several factors relied upon in reaching the R&R's

9

recommendation. Moreover, in weighing the patent interests, this Court notes that creating an exception to patent enforcement in this limited context will hardly open the floodgates to widespread uncompensated infringement. This case is not within the heartland of patent infringement suits. Japan Airlines, the alleged infringer, is not a competitor of the plaintiff nor does it derive any commercial or financial benefit from the alleged infringing activities which an Act of Congress compels it to commit.

The Court also finds unpersuasive IRIS's argument that a conflict between the Enhanced Border Protection Act and § 271(g) may be avoided by mandating that Japan Airlines secure a license from IRIS. This Court concurs with the R&R's finding that requiring Japan Airlines to secure a license is not a satisfactory resolution of this conflict. IRIS argues that other U.S. regulations governing the operation of commercial airlines require airlines to buy or lease property from others; and, in those situations, there is no authority to take the property free of charge. IRIS analogizes commercial airlines's purchase of certain property—such as seatbelts and high-frequency radios—to Japan Airlines's use of the patented passports at check-in locations. The Court finds this analogy unpersuasive. In this case, Japan Airlines is not being provided passports for free. Rather, it is compelled to examine them pursuant to laws designed to protect the national security of the United States. The airline has no control over the types of passports presented to it for inspection and has no way to avoid the allegedly infringing activity. And, as noted above, it obtains no commercial benefit whatsoever from its allegedly infringing action.

### D. Relevance of 28 U.S.C. § 1498(a)

In its Statement of Interest, the United States cautions this Court not to resolve this case on

the grounds set forth in the R&R and not to extend the reasoning of the <u>Smith Kline</u> decision to a case involving patents. The United States argues that there is no conflict between the Patent Act and the Enhanced Border Security Act because § 1498(a) of Title 28 exempts Japan Airlines from an infringement action under the Patent Act for examination of both U.S. passports and foreign passports.[2]  (See Statement of Interest of the United States ("Stmt. Int.") at 8-13.) It faults the R&R for not addressing this threshold issue.

Section 1498(a) provides in pertinent part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims. . . .  For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. §1498(a).

The United States points out in its Statement of Interest that 1498(a) serves two purposes. It acts as a waiver of sovereign immunity for claims against the government in the U.S. Court of Claims, and also codifies an affirmative defense for private parties who can show that its use of the infringing invention is both "for the government" and with the "authorization" or "consent" of the government. According to the United States, there is nothing in the statute that requires these two purposes to be coextensive. The United

---

[2] Japan Airlines in its original motion to dismiss claimed immunity only for its examination of U.S. passports. The United States provides no sound explanation for the applicability of Section 1498(a) to foreign passports in circumstances where there is no claim that as to foreign passports the United States engaged in any infringing activity.

11

States delivers to IRIS the bad news and the bad news: IRIS has no claim against the United States because the United States has not waived sovereign immunity under § 1498(a) for § 271(g) violations, but Japan Airlines nonetheless is immunized under § 1498(a) from private suits for these same violations.  Based on the cogent reasoning of the decision of the Court of Federal Claims in <u>Zoltek Corp. v. United States</u>, 85 Fed Cl. 409 (Fed. Cir. 2009), this Court rejects this reading of § 1498(a).

 IRIS and the United States agree that the United States has not waived immunity under § 1498(a) for acts of infringement under § 271(g) of Title 35.  <u>NTP, Inc. v. Research In Motion, Ltd.</u>, 418 F.3d 1282 (Fed Cir. 2005); <u>Zoltek Corp v. United States</u>, 442 F.3d 1345 (Fed. Cir. 2006) (direct infringement under § 271(a) is a necessary predicate for liability under section 1498).  Had the government waived immunity under § 1498(a), it is clear that Japan Airlines would be immunized against private suits.  A party is exempt from patent infringement suits under § 1498(a) where: "(1) the accused use or manufacture was undertaken for the Government, i.e., for the Government's benefit; and (2) the Government gave its authorization or consent for the accused use or manufacture."  <u>Hughes Aircraft Co. v. United States</u>, 534 F.2d 889, 897-98 (Ct. Cl. 1976).  This Court agrees with the government that Japan Airlines meets the two requirements of § 1498(a).

 The reason the United States is not liable is because § 271(g) was enacted after § 1498(a) and as explained in <u>Zoltek</u>, § 1498(a) "did not automatically expand to include the causes of action for patent infringement that were added by Congress after 1918 (such as § 271(g))."  <u>Zoltek</u>, 85 Fed Cl. at 417.  The <u>Zoltek</u> court quite logically concludes: "the

12

immunity of government contractors from infringement liability also did not expand, with the result that the immunity of government contractors under § 1498(a) would correspond only with the types of infringement included in § 271(a)." Id.

This Court agrees with the ultimate conclusion in Zoltek that "[a]ccording to its language and purpose, § 1498(a) only insulates government contractors from suit when the Government can be found liable." Id. at 418.

Since it is conceded that the Government has not waived immunity under Section 1498(a), Japan Airlines has no immunity under this provision.

### E. Japan Airlines's Remaining Arguments

In view of the above discussion, this Court does not address Japan Airlines' final argument that IRIS's claim is barred under the "doctrine of foreign sovereign compulsion."

### CONCLUSION

For the foregoing reasons, the Report and Recommendation, dated January 14, 2008, is hereby adopted as the opinion of the Court. The defendant's motion to dismiss is granted. The Clerk of the Court is directed to enter judgment in accordance with this order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2009

/s/ Carol B. Amon (electronically signed)
_____
Carol Bagley Amon
United States District Judge